Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1908 | **DATE** | 11/15/2002 |
| **CASE TITLE** | Alexander vs. Somer, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons set forth above, Alexander's motion for summary judgment as to Counts I and II (Doc #14) is hereby denied; Bloom Township/Somer's motion for summary judgment as to Counts I and II (Doc.#15) is granted as to Somer, in hi individual capacity and denied as to Bloom Township and Somer, in his official capacity. Filing of the parties' pre-trial order in open court is hereby set for November 25, 2002 at 2:30 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | NOV 1 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | G~/. | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| TP | courtroom deputy's initials | 02 NOV 15 PM 4:42 | date mailed notice | |
| | | OT 03-03-04 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
**NOV 1 8 2002**

OLIVER ALEXANDER, )
)
    Plaintiff, )
)
v. )
) 01 C 1908
THOMAS J. SOMER, individually, and in )
his official capacity, and BLOOM ) Judge Ronald A. Guzman
TOWNSHIP, a municipal corporation, )
)
    Defendants, )

## MEMORANDUM OPINION AND ORDER

Pending are the parties' cross motions for summary judgment pursuant to FED R. CIV. P. 56. For the reasons set forth below Plaintiff Oliver Alexander's ("Alexander") motion for summary judgment is denied and Defendants Thomas J. Somer ("Somer") and Bloom Township's ("Bloom Township") motion is granted in part and denied in part.

## BACKGROUND FACTS

From 1981 until July 6, 2000, Plaintiff Alexander was employed by Defendant Bloom Township. At the time of his termination, Alexander was serving as Director of the Supervisor's Employment Education and Disabled Services ("SEEDS") possessing full authority to create programs, implement devices and attract active participants to the program. In this capacity, Alexander reported to the Township Supervisor, Defendant Somer, who as chief executive officer was responsible for both supervision of the various departments and all hiring and termination decisions. Alexander also participated in meetings of the department heads where, issues pertaining to Township functions were discussed in roundtable fashion and where, Alexander contributed input that Somer relied on in making policy decisions. When, in 1997, Somer assumed the role of Township Supervisor, Alexander was serving as head of the General Assistance Department. However, in the spring of 1999, after persistent morale problems and a lack of work product, Somer,



believing that Alexander was "burnt out" and that perhaps a new opportunity would serve as motivation, reassigned him to SEEDS.

In April 1999, Alexander was elected to the position of alderman to the City Council of Chicago Heights. Alexander and Somer (who ran unsuccessfully for mayor) belonged to opposing, informal parties, but the election itself was non-partisan. Thereafter, Alexander and Somer continued a friendly relationship and would sometimes discuss matters coming before the City Council including issues concerning Bloom Township.

In 1999, a private individual brought a lawsuit in the chancery division of the Circuit Court of Cook County, *Dieringer v. Somer*, No. 99 CH 8472, naming, among others, Somer and Bloom Township as defendants. The suit alleged that Somer and two others had made fraudulent transactions in connection with Bloom Township's efforts to reactivate tax delinquent properties, thereby cheating taxpayers, including those in Chicago Heights and Bloom Township, out of hundreds of thousands of dollars. The City of Chicago Heights then joined the lawsuit as a plaintiff, without the approval of its City Council.

On July 5, 2000, a resolution was introduced to the Chicago Heights City Council to ratify the City of Chicago Heights' participation in the suit. Some three weeks prior to the vote, Alexander met with Somer and expressed discomfort at the prospect of a vote on Chicago Heights' participation in the lawsuit, given his dual obligations to Bloom Township and the City. Plaintiff suggests that Somer offered no guidance at this meeting and noted only his belief that Alexander would do the right thing. Defendant Somer contends that he informed Alexander that it was improper for him to take a position adverse to the interests of Bloom Township and that Alexander acknowledged that he could not vote given a conflict of interest.

On or about a week before the vote, Alexander met with the City Attorney regarding the upcoming vote to discuss any potential conflict of interest between his concurrent duties as alderman and as a director within Bloom Township. Although the City Attorney did not review the City's Ethics Ordinance with Alexander, he did show him statutory language to the effect that no conflict of interest would arise through Alexander's participation. Alexander also had a discussion with the

Mayor of Chicago Heights, who concurred with the City Attorney's position. Still, at no time did Alexander familiarize himself with the impact of the lawsuit on Bloom Township or attempt to determine whether he had a financial interest in the vote.

Ultimately, while believing that Somer had not personally engaged in wrongful conduct, Alexander, based on a moral conviction that due process should be followed, voted to approve the City's participation in the lawsuit. During the meeting, a fellow alderman objected to Alexander's participation on the grounds of conflict of interest, but, when the City Attorney voiced his lack of concern for any ethical impropriety, Alexander's vote stood and the measure passed. Following the meeting, Somer spoke with one or more members of the City Council by telephone and was informed of Alexander's vote.

Somer, viewing Alexander's action as "the brick that broke the camel's back," resolved to terminate him immediately. Arriving at work at 10 a.m., on July 6, 2000, Alexander discovered a letter on his desk which stated in relevant part: "Please be advised that effective immediately your employment with Bloom Township is terminated." No reason was stated in the letter for Alexander's termination. Alexander attempted unsuccessfully to contact Somer by telephone, as the call was either refused and/or the message not received or never returned.

On February 15, 2001, following a jury trial, the Chancery Division entered a directed verdict in favor of all defendants in the *Dieringer* suit. On March 19, 2001, Alexander filed the instant suit against Bloom Township and Somer, in both his individual and official capacities, claiming, in Count I, abridgement of his First Amendment rights under 42 U.S.C. § 1983 and, in Count II, a pendant retaliatory discharge claim pursuant to state law. Bloom Township then entered a motion to dismiss Count II, FED R. CIV. P. 12(b)(6), which was denied. *Alexander v. Bloom Township*, No. 01 C 1908 (N.D. Ill. 2001).

On April 19, 2002, the parties filed cross motions for summary judgment under FED. R. CIV. P. 56. Somer/Bloom Township argues that Alexander's vote was a political act and that he held a policymaking position within Bloom Township and was therefore subject to termination by his employer. In the alternative, Defendants argue that irrespective of Alexander's policymaking status

3

and the negative impact resulting from his vote, his sub par job performance justified his dismissal. Defendants also contend that Somer, in his individual capacity is entitled to qualified immunity as to Count I. In the alternative, Somer/Bloom Township suggest that summary judgment is proper for all defendants as to Count I and therefore the court should exercise its discretion in dismissing Count II for lack of subject matter jurisdiction.

Regarding Count I, Alexander argues that summary judgment is proper because the vote had no connection with the scope of his employment, rendering his policymaking status inapposite and affording him First Amendment protection against retaliatory discharge. Alexander also contends that Somer's reaction to his vote was the cause of discharge and that Somer/Bloom Township has not met the burden of demonstrating legitimate alternative motives for dismissal. Further, Alexander contends that summary judgment is appropriate for Count II, because Somer/Bloom Township violated Illinois public policy, which protects elected officials from personal retribution for acts undertaken during performance of their duties.

## DISCUSSION

### I. Summary Judgment Standard

Summary Judgment is proper when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56; *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This standard of review applies to cross motions for summary judgment. *International Brotherhood of Electrical Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The nonmovant must show through specific evidence that a triable issue of fact remains on the issues on which he bears the burden of proof at trial. *See Celotex*, 477 U.S. at 324. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party. *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). It is with these standards in mind that we address the instant motions.

## II. Jurisdiction Federal Claim

In order to bring a 42 U.S.C. § 1983 claim in federal court, the plaintiff must allege that a person acting under color of state law engaged in conduct that deprived him of a right, privilege or immunity secured by the Constitution. *See* 42 U.S.C. § 1983. A court determines whether there is federal question jurisdiction by examining the plaintiff's well pleaded complaint to ensure that issues of federal law are raised. *Henderson v. Bolanda*, 253 F.3d 928, 932 n.3 (7th Cir. 2001). After examining Alexander's allegation that Defendants' decision to discharge him, following his vote on the City Council, constituted abridgment of his First Amendment rights, we are satisfied that Alexander has pleaded a non-frivolous constitutional claim that is sufficient to invoke the Court's federal question jurisdiction. *See Woods v. City of Michigan City*, 940 F.2d 275, 281 (7th Cir. 1991).

## III. Qualified Immunity

As part of its request for summary judgment, Defendant Somer, in his individual capacity, asserts the affirmative defense of qualified immunity with respect to Count I. Qualified immunity, shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). The Supreme Court's jurisprudence on qualified immunity requires that this issue be resolved at the earliest possible stage of the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The qualified immunity inquiry is limited to an objective reasonableness standard. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Whether qualified immunity applies is a matter of law. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987). In order for Alexander to survive Somer's assertion of qualified immunity two conditions must be satisfied: 1) the complaint must allege facts that, if

5

true, would constitute a violation of a constitutional right; 2) the case law must be clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Delgado v. Jones*, 282 F.3d 511, 516 (7th Cir. 2002) (citing *Harlow*, 457 U.S. at 818-19).

Turning to the question of whether the alleged facts establish a constitutional violation by Somer, we note that this initial inquiry must be had in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Generally speaking, speech by government employees, completely divorced from the context of employment is protected by the same standard as speech by those not employed by the government. *Bonds v. Milwaukee County*, 207 F.3d 969, 976 (7th Cir. 2000); *see generally Connick v. Myers*, 461 U.S. 138, 142 (1983). Yet, the government as employer may apply legitimate employment standards in regulating the workplace and promoting efficient operation. *Bonds*, 207 F.3d at 976. This may require the government to regulate the speech of its employees in a manner that, outside an employment relationship, would violate the First Amendment. *Id.* at 977. In *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), the Supreme Court outlined an approach designed to create an appropriate balance between the plaintiff's First Amendment rights and the interests of the government as employer. *See Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 971 (7th Cir. 2002).

Under *Pickering* analysis, a government employee must satisfy a two-part inquiry to prove wrongful discharge under the First Amendment: 1) the speech must address a matter of public concern; 2) the employee's First Amendment interest on this matter must not be outweighed by any injury that the speech might inflict on the government interest in promoting the efficiency of its public services. *Bonds*, 207 F.3d at 979. Defendants however contend that *Pickering* balancing is unnecessary in the instant case because Alexander, as a department head, who provided input that Somer used in forming policy, falls under the policymaking employee exception and therefore outside of First Amendment protection.

The Court developed the policymaking employee exception to *Pickering* First

Amendment analysis in *Elrod v. Burns*, 427 U.S. 347, 367 (1976). There the Court held that the termination, based on partisan affiliation, of an employee who "acts as an advisor or formulates plans for the implementation of broad goals," is not violative of the First Amendment because, "representative government [should] not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod*, 427 U.S. at 367-68. This exception was broadened in *Branti v. Finkel*, 445 U.S. 507 (1980), beyond employees with policymaking authority, to include any employee for whom "party affiliation is an appropriate requirement for the effective performance of the office involved." *Branti* 445 U.S. at 518. The Seventh Circuit has interpreted the definition of policymaking employee to include positions where the individual exercises either directly or indirectly, meaningful input into government decision making on issues where there is room for principled disagreement on goals or implementation. *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995).

The Seventh Circuit, however, has explicitly left open the question of whether a government employer could cite the policymaking employee exception to limit its policymaking employees' speech unrelated to the performance of their duties. *See Warzon*, 60 F.3d at 1239 n.1; *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1221 (7th Cir. 1994); *Wilbur v. Mahan*, 3 F.3d 214, 218 (7th Cir. 1993). Here, Alexander's vote at the Chicago Heights City Council meeting, when viewed favorably for the plaintiff, was entirely divorced from the performance of his duties at Bloom Township. The vote concerned litigation surrounding tax reactivation efforts, activities having no bearing on the SEEDS program or Alexander's responsibilities thereunder. Further, despite Defendants' intimations of a contentious political environment, pitting Alexander's informal party against Somer's, the evidence tends to support a picture of friendly pre-termination relationship, and reveals the nonpartisan nature of council elections. Further, the vote concerned the fiscal needs of the City and the interest of its citizens; a political issue concerned more with fiscal necessity than political association. *See generally Wilbur*, 3 F.3d at 221 (Easterbrook, J. concurring) (what is "political" can be interpreted broadly and is difficult to assess). Notions of political muscling or polarized ideological struggle

7

ultimately fail considering at least one alderman broke supposed "ranks" for the vote.

Ultimately, while, an employee's status as policymaker, assuming though not deciding that Alexander was indeed a policymaking employee, bears considerable attention when weighing the interests of the government, nevertheless, the policymaking employee exception under the *Branti/Elrod* line does not apply and courts must apply *Pickering* balancing when the speech at issue does not implicate the employee's politics or substantive policy viewpoints. *See Vargas-Harrison*, 272 F.3d at 973-74; *Bonds*, 207 F.3d at 979; *see also Marshall*, 32 F.3d at 1221 (holding government termination of a policymaking employee invalid because the speech did not involve political or policy viewpoints). Therefore, viewing Alexander's vote as unconnected with his or Somer's political ties or his specific duties under SEEDS and noting the absence of a policy dispute regarding Alexander's position as Director of SEEDS, we decline to treat this case under the policymaking employee doctrine and instead apply *Pickering*.

Turning then to the first prong of the *Pickering* analysis, the Court considers "the content, form and context of a given statement," to determine whether Alexander's speech regarded a matter of public concern. *Connick*, 461 U.S. at 147. Speech on matters of public concern has been defined as speech relating to any matter of political, social, or other concern to the community. *Khuans v. School Dist. 110*, 123 F.3d 1010, 1014-15 (7th Cir. 1997). Here, Alexander's speech concerned a matter of great public interest to the citizens of Chicago Heights; namely, the possibility that fraudulent transactions had denied their city government tax monies, and as a result prevented residents from the benefits of certain programs or services. Further, Alexander's speech occurred during a public meeting of the City Council, in his role as an official elected to represent the interests of his constituents. The Seventh Circuit has noted that certainly, bringing to light actual or potential wrongdoing during the provision of public services is in the public's interest. *Khuans*, 123 F.3d at 1016. Even if Alexander acted against his personal or financial interests in terms of his relationship with Bloom Township or alternatively, as Defendants allege, in favor of his informal political party, still, Plaintiff's speech could be characterized as a matter of public concern. *See Auriemma v. Rice*, 910 F.2d 1449,

8

1460 (7th Cir. 1990) (en banc); *see also Campbell v. Towse*, 99 F.3d 820, 828 (7th Cir. 1996) (standing in part for the proposition that speech by public employees pursuant to their employment duties still constitutes speech on a public concern). Therefore, given the high public interest in the subject matter of the speech we find that the first prong of *Pickering* analysis is satisfied.

The second prong, known as *Pickering* balancing, requires analysis of several factors including 1) whether the speech would create problems in maintaining discipline or harmony among co-workers; 2) whether the employment relationship is one in which personal loyalty and confidence are necessary; 3) whether the speech impeded the employee's ability to perform her responsibilities; 4) the time, place, and manner of the speech; 5) the context in which the underlying dispute arose; 6) whether the matter was one on which debate was vital to informed decision making; and 7) whether the speaker should be regarded as a member of the general public. *See Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999).

At this stage in the litigation the Court is unable to determine the proper balance between the Township's interest in government efficiency and work place harmony and Alexander's First Amendment interests because genuine issues of material fact remain. This Court has held that summary judgment based on qualified immunity is not proper when the question of immunity turns on issues of disputed fact. *Estate of Palma v. Edwards*, 2001 WL 1104716, at *3 (N.D. Ill. 2001) (distinguishing *Saucier* on the basis of incurred injury). Here, it remains unclear whether Alexander's vote would have resulted in any disruption at Bloom Township or, specifically, within the administration of SEEDS. There are no statements in the record from co-workers to this effect, nor is it apparent that Chicago Heights' participation in a suit against Bloom Township/Somer would have prevented Alexander from faithfully carrying out the duties of SEEDS director. Further, unlike the speech in *Khuans*, where plaintiff's comments indicated hostility and conflict with a supervisor, as well as co-workers, here, both parties indicate a previously amicable relationship and Alexander relates his belief that Somer had not engaged personally in any wrongdoing. *See Khuans*, 123 F.3d at 1018.

Alexander's status as a program director and his input during meetings of the department heads, which influenced policy decisions, would seem to indicate an employment relationship that depended upon personal loyalty and trust, especially given Alexander's insistence on reporting to Somer directly despite the latter's designating an administrator for this purpose, of a kind that might well be shattered by Alexander's approving suit against Somer and Bloom Township. Yet, while, generally, courts should give substantial deference to government predictions of harm from employee speech, *Waters v. Churchill*, 511 U.S. 661, 680 (1994), when an employee's speech concerns a breach of the public trust on the part of his superiors or on serious matters of public interest, the government must make a more substantial showing than otherwise, that the speech, is in fact likely to be disruptive. *Waters*, 511 U.S. at 674. Here, Alexander's vote concerns vital interests of the citizens of Chicago Heights and at least a potential abuse of public trust on the part of Somer; therefore, more than Somer's assertions of potential disruption in his affidavit is required for Defendants to reach the heightened threshold.

Still, even assuming the facts alleged show that Somer violated Plaintiff's First Amendment rights, in order to prevent the application of qualified immunity, Plaintiff must satisfy the second condition. The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted. *See Saucier*, 533 U.S. at 202. If, however, the law did not put the official on sufficient notice, summary judgment based on qualified immunity is appropriate. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Here, we find that Somer did not have sufficient notice of clearly established law. In the instant case, Somer argues that, as of July 2000, federal statutory or constitutional law was not so clearly well defined so as to necessitate the conclusion that terminating an employee in connection with that employee's vote on a city council was prohibited. While it has been established for many years in this Circuit that a public employer may not retaliate against an employee who exercises his First Amendment speech rights, *Gustafson v. Jones*, 117 F.3d 1015,

1021 (7th Cir. 1997), the law is not settled on the novel question of whether a public employer may discharge an employee for speaking on a matter of public concern while acting in his capacity as an elected official of a government that is distinct from his employer. This Circuit has noted that application of the *Pickering* analysis, like all balancing tests, produces a wide gray area between the clearly legal and the clearly illegal and that where a case, such as the instant one, falls within that gray area, the reasonable public official is accorded the benefit of the doubt. *See Gustafson*, 117 F.3d 1022 (discussing *Walsh v. Ward*, 991 F.2d 1344 (7th Cir. 1993). The law being uncertain, as of July 2000, Plaintiff has not met the second condition. Therefore, Somer, in his individual capacity is entitled to qualified immunity and summary judgment as to Count I is hereby granted in his favor.

## IV. First Amendment Retaliation

Turning then, to the parties' summary judgment motions as they pertain to Alexander, Bloom Township and Somer, in his official capacity the Court recognizes that a plaintiff bringing a § 1983 claim based on the First Amendment must establish 1) that her conduct was constitutionally protected and 2) that her conduct was a "substantial factor" or "motivating factor" in the challenged action by the defendant.[1] *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The 7th circuit has noted that even if a defendant was "brimming over with unconstitutional wrath" against the plaintiff a § 1983 claim will not be established unless plaintiff can show that the challenged action would not have occurred "but for" the constitutionally protected conduct. *Johnson v. Smelstor*, 70 F.3d 469, 482 (7th Cir. 1995). If, however, the plaintiff meets this burden, then the defendant must prove, by a preponderance of the evidence, that it would have taken the same action even in the absence of

---

[1] Further, the Court is aware that in the Seventh Circuit, in order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must allege the existence of either an express policy or a custom that was the direct cause of the deprivation of a constitutional right. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978); *Caldwell v. City of Elwood*, 959 F.2d 670, 673 (7th Cir. 1992). While neither party has addressed this issue, taking Plaintiff's well pleaded allegations as true, *McTigue v. City of Chicago*, 60 F.3d 381,382 (7th Cir. 1995), Alexander has adequately claimed that his constitutional injury was caused by a person, namely Somer, with final policymaking authority for purposes of a claim under 42 U.S.C. § 1983. *See McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

11

the protected conduct. *Mt. Healthy*, 429 U.S. at 287.

Having already addressed the outstanding questions regarding the constitutionality of Alexander's conduct, we note that the second element in the analysis contains unresolved issues of fact as well. Defendants contend that given Alexander's poor work performance, his refusal to report to the town administrator as directed by Somer, and his willingness to engage in actions in which he had a conflict of interest, and which were contrary to the political and financial interests of the Township, that Alexander would have been terminated regardless of his vote. Plaintiff counters that Somer provided no notice to Alexander that he was in danger of termination and that Defendants cannot, consistent with *McKennon v. Nashville Banner Publishing*, 513 U.S. 352, 360 (1995), demonstrate that Somer was not motivated at the point of decision by legitimate reasons. Plaintiff also relies on Somer's statement that the vote was the "brick that broke the camel's back" as evidence that Plaintiff's protected speech was the "but for" cause of his termination.

Alexander has met the initial burden of establishing that his conduct was a motivating factor in Somer's termination decision. *Gooden v. Neal*, 17 F.3d 925, 928 (7th Cir. 1994). Somer's statement combined with his admission that the decision to terminate occurred only after he learned of Plaintiff's vote demonstrate that Alexander's speech was a substantial factor in his discharge. *Id.* However, the Court finds a genuine dispute surrounding Defendants' efforts to meet their burden of showing that Somer would have reached the same conclusion even in the absence of Alexander's speech. *Id.* Defendants cite Alexander's prior poor performance in General Assistance and his continued faltering in the SEEDS program as justifications for termination independent of the Council vote. However, Somer had never, beyond the transfer from General Assistance to SEEDS, subjected Plaintiff to any discipline despite the graduated measures available to him, as Township Supervisor, under the employee handbook. Further, while discovery revealed the existence of a complaint that Plaintiff left work ten minutes early on one occasion, there are no other substantial written criticisms or reports of Alexander's job performance by Somer or any other individuals.

12

Alexander's termination letter provides no explanation or rationale for his firing. Plaintiff also suggests that he never received any additional information from Somer despite having left him a telephone message. There is also some discrepancy regarding what was said during the meeting between Somer and Alexander prior to the vote. This conversation speaks to whether Somer admonished Plaintiff not to participate in the vote; as well as if Alexander affirmatively stated that he would not due to conflict of interest and therefore goes to the question of loyalty. Lastly, while Defendants state that Alexander's disloyalty, and the likelihood that disruption at the Township would ensue, factored heavily in Somer's termination decision, the actual decision was made, during the brief period spanning the evening of July 5 through the morning of July 6, and only after Somer received word of Alexander's vote. Plaintiff indicates that, the absence of evidence to suggest Somer was otherwise intending to fire Alexander yields the reasonable inference that Alexander was impermissibly terminated on the sole basis of his First Amendment speech. As a result, the Court denies summary judgment for either Plaintiff, Bloom Township or Somer, in his official capacity; viewing the evidence, at this stage, as such that a reasonable jury could find for either party.

### V. Supplemental Jurisdiction

As discussed above, this Court's original jurisdiction derives from Alexander's federal 42 U.S.C. § 1983 claim. The pendant state law retaliatory discharge claim falls within our supplemental jurisdiction if the claims are "so related... that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This statute codifies the notion that "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." '" *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quoting *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-65 (1997)).

13

Here, we find that the state retaliatory discharge claim is so related to the federal question as to form one constitutional case for our consideration. Illinois has recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at will employment. *Balla v. Gambro, Inc.*, 145 Ill.2d 492, 498-99 (1991). To establish a cause of action for retaliatory discharge, a plaintiff must demonstrate that 1) he was discharged in retaliation for his activities; and 2) the discharge is in contravention of a clearly mandated public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 35 (1994). Retaliatory discharge seeks to achieve a proper balance among the employer's interest in operating a business efficiently, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out. *Jacobsen v. Knepper & Mosa*, 185 Ill.2d 372, 377 (1998).

The retaliatory discharge claim turns on an identical set of facts as the 42 U.S.C. § 1983 claim, namely Alexander's vote and his subsequent termination. Proof of the two prong test concerns the same witnesses, transactions and evidence as is required for the federal question claim. As judicial resources would not be harmed and as we have asserted jurisdiction over the federal question, we resolve to exercise our discretion to hear Plaintiff's pendant state claim. Further, as the same nucleus of operative facts is concerned, the same questions of fact discussed above remain for consideration. Therefore, while we claim jurisdiction over the claim, we decline to grant Plaintiff summary judgment on state law grounds.

## CONCLUSION

For the reasons set forth above, Alexander's motion for summary judgment as to Counts I and II (Doc. #14) is hereby denied; Bloom Township/Somer's motion for summary judgment as to Counts I and II (Doc.#15) is granted as to Somer, in his individual capacity and denied as to Bloom Township and Somer, in his official capacity. Filing of the parties' pre-trial order in open court is hereby set for November 25, 2002 at 230 p.m.

SO ORDERED

ENTERED:

HON. RONALD A. GUZMAN
United States Judge